UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

JEFFREY J. MUNSCH and
PENNY R. MUNSCH,

          Debtors.
_____

NEIL R. McKLOSKEY, TRUSTEE,

          Plaintiff,
v.

GUARANTY BANK,

          Defendant.

Case No. 05-23178

Chapter 7

Adversary No. 05-2437

_____

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT
_____

      The chapter 7 trustee brought this adversary proceeding to recover funds paid by the debtors prepetition to the defendant under fraudulent transfer and breach of contract theories. After the defendant answered the amended complaint and asserted affirmative defenses, the plaintiff filed a motion for summary judgment, and the parties filed briefs and stipulated facts.[1]

      This court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(H). This decision constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. For the reasons stated below, the plaintiff's motion for

---

[1] The trustee originally plead his cause of action under 11 U.S.C. § 548, and amended the complaint to include a state law claim under Wis. Stat. § 242.04. The defendant answered the original complaint and the trustee did not move for leave to file an amended complaint. Then again, the defendant filed a brief in support of granting it summary judgment, but no actual motion for summary judgment. Both procedural oversights may be remedied.

summary judgment is denied, and the defendant is granted summary judgment.

## BACKGROUND

Guaranty Bank loaned the Munsches $50,265.00 on July 27, 2000, secured by a second mortgage on the debtors' homestead. The debtors' home was subsequently foreclosed on by the primary mortgage holder and sold at a sheriff's sale in September 2003. Because the loan was in default and the bank was not satisfied by the proceeds of the sale, it initiated a money judgment proceeding against the debtors. The bank was owed $47,574.50 plus interest at the time the lawsuit was filed.

The debtors never answered the bank's complaint, but did hire an attorney to negotiate a settlement of the bank's claims. The debtors initially offered to waive their right to file bankruptcy on the obligation, as well as a payment of $15,000, in settlement of the state court complaint. Ultimately, the parties agreed that the debtors would pay the bank $20,000 by January 19, 2004, in exchange for a release of the claims and dismissal of the lawsuit with prejudice. On January 15, 2004, the debtors' counsel sent a letter to the bank's counsel stating the debtors could only afford to pay $10,000. The offer for a lesser payment was rejected by the bank's attorney and no payment was made on or before January 19th, the agreed deadline. Judgment was entered by default against the debtors on January 21, 2004, in the amount of $49,132.13, plus costs and disbursements.

Then on February 6, 2004, the debtors sent a check for $20,000 through their attorney to the bank's counsel, along with a letter noting that such payment was "settlement in full" of the debtors' account with the bank and requesting the "necessary release and satisfaction." The bank applied the $20,000 toward the judgment amount owed and continued with a garnishment action

to obtain the rest of the amount due. The garnishment was subsequently discontinued, although the record is unclear as to when the garnishment ceased. The debtors filed their bankruptcy petition on March 5, 2005, and the trustee commenced this adversary proceeding against the bank.

ARGUMENT

The trustee acknowledges that the settlement agreement was no longer in effect at the time the bank received the payment from the debtors. The trustee points out that after the debtors' attorney offered a lesser payment of $10,000 and the agreed payment of $20,000 was not made on time, the bank was justified in withdrawing the settlement agreement and proceeding to judgment against the debtors. However, after the debtors breached the contract, they made a conditional offer to the bank to accept the late payment in full satisfaction of the judgment. According to the trustee, the debtors' conditional transfer of $20,000 to the bank without receiving an equivalent value, i.e., the release upon which the transfer was conditioned, was a fraudulent transfer under section 242.04(1)(b)(2), Wis. Stats.

The bank argues the fraudulent transfer action based on federal law is barred by the one-year statute of limitations. The bank further asserts both the state and federal fraudulent transfer causes of action should be dismissed because all of the necessary elements cannot be met. Since the bank gave the debtors a dollar for dollar credit against the judgment, the trustee cannot prove they were not given reasonably equivalent value in exchange for the transfer. The trustee's breach of contract argument likewise fails because the bank could not have violated a contract that was no longer in effect. Also, the debtors breached the original agreement by failing to provide consideration by filing bankruptcy. Finally, according to the bank, the defense of accord

3

and satisfaction (whether payment of a smaller amount than the whole amount owed with a note that such payment is payment in full satisfaction of the entire debt) is inapplicable because the amount owed at the time of the transfer was not in dispute and was liquidated.

DISCUSSION

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Even though a party opposing a motion for summary judgment has failed to file a formal cross motion, the court may order summary judgment in favor of the opposing party if that party is entitled to judgment as a matter of law. MOORE'S MANUAL: FEDERAL PRACTICE AND PROCEDURE § 17.20 (2006) ("in extraordinary circumstances a party may request that the court enter summary judgment in its favor without having made a separate formal motion, and the court may deem such a request as a summary judgment motion and grant the motion, provided that: (1) the grounds for the motion has been made clear in other written documentation or during trial proceedings, and (2) the opposition party has received adequate notice and an opportunity to respond").

*Fraudulent Transfer*

The federal fraudulent transfer statute, 11 U.S.C. § 548, contains a one-year statute of limitations that bars the trustee from using that section to avoid the transfer. The transfer in this case occurred more than one year before filing. However, under the strong-arm provision of the Bankruptcy Code, 11 U.S.C. § 544(b), the trustee can avoid any transaction of the debtor that would be voidable by any actual unsecured creditor under state law. *See In re Leonard*, 125 F.3d
4

543, 544 (7th Cir. 1997). The trustee need not identify the creditor, so long as the unsecured creditor exists. *Id*. Thus, the trustee amended his complaint and proceeded against the bank under the constructive fraud provision of the Uniform Fraudulent Transfer Act (UFTA). Although there was no filed written agreement for such amendment after joinder, the defendant did not object to the amended complaint and addressed matters in the amended complaint. Therefore the court will construe the defendant's failure to object as a waiver and allow the amended complaint.

Wisconsin's version of the Uniform Fraudulent Transfer Act (UFTA) states:

(1) A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
. . .
(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
. . .
2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Wis. Stat. § 242.04(1)(b)(2). The language of UFTA and section 548 are nearly identical[2]; the only significant difference is a longer statute of limitations under Wisconsin law. *See* Wis. Stat. §§ 242.09, 893.425. Thus, the transfer here falls within the time limits set by Wisconsin law and incorporated in 11 U.S.C. § 544(b)(1).

The trustee claims the bank's $20,000 "credit" toward the deficiency balance was not

---

[2]Section 548 is derived from the UFCA, the predecessor to the UFTA, and resembles it closely enough that case law under one statute is usually applicable to the other. Michael L. Cook, et al., *Fraudulent Transfers*, 887 PLI/Comm 183, 195 (2006). The only other relevant difference is a heightened burden of proof at trial. Under Wisconsin law, the plaintiff must prove the elements of a fraudulent transfer by clear and convincing evidence. *Mann v. Hanil Bank*, 920 F. Supp. 944 (E.D. Wis. 1996) (interpreting Wisconsin's UFTA).

5

reasonably equivalent value. "Value" is defined in § 548(d)(2)(A) to include property or satisfaction or securing of a present or antecedent debt. The determination of the existence of "reasonably equivalent value" requires two separate and distinct inquiries; a court must determine whether the debtor received any value at all, and, if so, whether the value was reasonably equivalent to what the debtor gave up. *Anand v. National Republic Bank of Chicago*, 239 B.R. 511 (N.D. Ill. 1999).

In determining whether a debtor received "reasonably equivalent value" in a transaction sought to be avoided as constructively fraudulent, courts consider a host of factors, including the totality of the circumstances, the good faith of the parties, the difference between the amount paid and the fair market value, and whether the transaction was at arms length; additionally, for purposes of considering reasonable equivalence, the critical date is the date of the transfer at issue. *Peltz v. Hatten*, 279 B.R. 710 (D. Del. 2002); *In re General Search.com*, 322 B.R. 836 (Bankr. N.D. Ill. 2005).

Naturally, if a debtor's prepetition payment discharged a legal debt, in part or in whole, in good faith, the debtor would have received reasonably equivalent value, and the transfer would not be assailable as a fraudulent transfer. *In re Fink*, 217 B.R. 614 (Bankr. C.D. Cal. 1997). At the time of the transfer, the debtors *thought* they would be getting full satisfaction of their $49,132.13 debt in exchange for $20,000. One question, then, is whether there was an agreement for the release or whether the bank's conduct should be construed as such. If not, there is an additional question whether the transfer is avoidable for lack of consideration. Stated another way, does the fact that the debtors got less than they thought they would get, even if they knew they were not paying full price for it, mean they did not get full value for their transfer?

6

Case 05-02437-mdm    Doc 21    Filed 05/22/06    Page 6 of 10

*Breach of Contract*

The requisites of a contract are an offer, acceptance, and consideration, all resulting from a meeting of the minds. *See Goosen v. Estate of Standaert*, 189 Wis.2d 237, 246-47, 525 N.W.2d 314, 318 (Ct. App. 1994). Likewise,

> [A] contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.

*Theuerkauf v. Sutton*, 102 Wis.2d 176, 185, 306 N.W.2d 651, 658 (1981) (citations omitted).

In this case, the bank endorsed and negotiated the debtors' check for $20,000. The trustee argues that the letter accompanying the check from debtors' counsel was sufficient to constitute an offer, and the bank could not keep the money because transfer was conditioned upon acceptance, and the bank did not accept the offer. If the bank's conduct were construed as an acceptance giving rise to a new contract, the trustee could not recover because there would have been adequate consideration.

Under some circumstances, the receipt of the $20,000 by the bank might be construed as an acceptance of new contract terms. *See* CORBIN ON CONTRACTS, § 70.2(3), at 325 ("The creditor's exercise of dominion over the debtor's funds even though not intended by the creditor as an acceptance is a sufficient manifestation of assent."). If the parties had no legal relationship before the transfer took place, this concept might have merit. However, the debtors still owed the debt after the settlement agreement expired. This court finds as a matter of law that there was no new contract and could be no breach by the bank. The time for payment under the original agreement had come and gone, and most importantly, the bank had taken a default judgment for

7

the full amount due and commenced garnishment proceedings. It obviously considered the original agreement breached, or at least expired, and acted accordingly. There was nothing ambiguous about its position. The bank could not have more clearly said, "We have no deal."

With no new contract in place, the legal relationship of the parties was that of judgment debtor and judgment creditor. The letter from the debtors' counsel conveyed the check and asked for a release, but the bank was not obliged to do so without an agreement. The debtors were obliged, however, to pay the debt. When the bank paid down the debt, the debtors received a dollar for dollar credit. There was full consideration for the transfer. *In re Fink*, 217 B.R. 614 (Bankr. C.D. Cal. 1997). The debtors may have wanted additional consideration in the form of a release of the balance due, but this does not negate the fact that they received full consideration by the credit alone.

*Accord and Satisfaction*

A payment in full settlement of a claim for which the amount is in dispute discharges the entire claim under the doctrine of accord and satisfaction. *Matter of Carpenter*, 205 Wis.2d 365, 371, 556 N.W.2d 384, 386- 87 (Ct. App. 1996). Accord and satisfaction requires that a dispute exist between parties as to the amount owed; a tender of an amount intended by the offeror and reasonably understood by the offeree as full satisfaction of the dispute; and acceptance of the tender. *See Hoffman v. Ralston Purina Co.*, 86 Wis.2d 445, 453-54, 273 N.W.2d 214, 217 (1979). It is not necessary for the magic words "full payment" or "full and final release" to be used. *See Olson v. Northwestern Furniture Co.*, 6 Wis.2d 178, 182-83, 94 N.W.2d 179, 181 (1959). The doctrine of accord and satisfaction constitutes a defense to an action to enforce a claim, but it is applicable only where there existed a disputed claim and the parties agreed, by

express or implied contract, to discharge the disputed claim by substitute payment. *Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis.2d 95, 113, 341 N.W.2d 655, 664 (1984); *Chicago & N.W. Transp. Co. v. Thoreson Food Prods., Inc.*, 71 Wis.2d 143, 146, 238 N.W.2d 69, 71 (1976).

The supreme court in *Flambeau* explained:

> First, the law in Wisconsin has long been that payment in full settlement of a claim which is disputed as to amount discharges the entire claim. Resolution of an actual controversy involving some subject of pecuniary value and interest to the parties is sufficient consideration of an accord and satisfaction.
>
> A second rule, also of long-standing, is that payment of part of a debt which is not disputed as to amount does not discharge the debt altogether, even when it is expressly agreed that the partial payment is received in full satisfaction. The debtor's mere refusal to pay the full claim does not make it a disputed claim. Where the refusal is arbitrary and the debtor knows it has no just basis, the payment of less than the full amount claimed does not operate as an accord and satisfaction even though it is tendered and received as such. This rule is based on the principle that a part payment furnishes no consideration for relinquishing the balance of the debt.

*Id*. at 113-114, 341 N.W.2d at 664 (citations omitted).

The second rule fits the facts of this case. However, the first element, a dispute as to the amount of liability, does not. Not wanting to pay a valid debt does not mean the debt is disputed in the legal sense. There was never a dispute as to the amount; it appears that the only motivation for settlement for a different amount was what the debtors could afford or borrow within a short time frame, not what they owed. There was no accord and satisfaction.

To summarize, the bank was entitled to accept the funds tendered as partial satisfaction of its claim against the debtors, and the bank gave full consideration for the payment. The trustee cannot recover the payment made by the debtors to the bank. Therefore, the trustee/plaintiff's motion for summary judgment is denied, and the bank/defendant is entitled to summary

9

judgment in its favor. The complaint is dismissed without costs to either party. A separate order for judgment shall be entered accordingly.

May 22, 2006

                                              Margaret Dee. McGarity
                                              U.S. Bankruptcy Judge